1   FENNEMORE CRAIG, P.C.
    William G. Klain (No. 015851)
2   Sean T. Hood (No. 022789)
    Spencer A. Shockness (No. 038752)
3   2394 E. Camelback Road
    Suite 600
4   Phoenix, Arizona  85016
    Telephone:  (602) 916-5000
5   Email:  wklain@fennemorelaw.com
    Email:  shood@fennemorelaw.com
6   Email:  sshockness@fennemorelaw.com

7   Attorneys for Plaintiffs

8

9                   UNITED STATES DISTRICT COURT

10                     DISTRICT OF ARIZONA

11  Madera Group Investments, LLC, a          No.
    Nevada limited liability company; and
12  Madera Group Holdings, LLC, a Florida     **VERIFIED COMPLAINT**
    limited liability company,
13
                       Plaintiffs,
14
            v.
15
    Toca Madera Scottsdale, LLC, an Arizona
16  limited liability company; Toca Madera
    Las Vegas, LLC, a Nevada limited liability
17  company; Toca Madera Brickell, LLC, a
    Florida limited liability company; Casa
18  Madera Weho, LLC, a California limited
    liability company; Noble 33 Holdings,
19  LLC, a Nevada limited liability company;
    Noble 33 Management, LLC, a Nevada
20  limited liability company; The Madera
    Group, LLC, a Nevada limited liability
21  company; Tosh Berman, an individual;
    Michael Tanha, an individual; and Mahdiar
22  Karamooz, an individual,

23                     Defendants.

24

25         Plaintiffs Madera Group Investments, LLC ("MGI") and Madera Group Holdings

26  ("MGH") (collectively, "Plaintiffs"), for their Complaint, hereby allege as follows:

27

28

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX
        51534117

**INTRODUCTION**

1.      Plaintiffs MGI and MGH have collectively invested more than $2,000,000.00 in four separate single purpose LLCs, collectively managed by a common control group.

2.      Upon information and belief, and as detailed herein, this control group has intentionally and systematically defrauded MGI, MGH, and the other members of these LLCs through a complex fraudulent design which, among other schemes, siphoned to themselves substantial revenues and financial benefits realized through operating various restaurant establishments while foisting the costs and expenses incurred to generate such revenues upon the restaurants themselves and, ultimately, investors in those restaurants. Upon information and belief, to conceal and perpetuate their wrongful schemes, the control group communicated to the restaurant-level investors fraudulent financial reports and, when faced with proper demands for inspections of business records from an investor, initiated groundless litigation against it in three different states seeking, in part, to dissociate it from membership.

**PARTIES AND JURISDICTION**

3.      MGI is a Nevada limited liability company organized and operated to facilitate pooled investment activities for its members.

4.      MGH is a Florida limited liability company organized and operated to facilitate pooled investment activities for its members.

5.      Toca Madera Scottsdale, LLC is an Arizona limited liability company that, at all relevant times herein, has been conducting business in Maricopa County, Arizona, that had an impact on interstate commerce.

6.      Toca Madera Las Vegas, LLC is a Nevada limited liability company that, at all relevant times herein, has been conducting business that had an impact on interstate commerce.

7.      Toca Madera Brickell, LLC is a Florida limited liability company that, at all relevant times herein, has been conducting business that had an impact on interstate

commerce.

8.      Casa Madera WeHo, LLC is a California limited liability company that, at all relevant times herein, has been conducting business that had an impact on interstate commerce.

9.      Noble 33 Holdings, LLC is a Nevada limited liability company that, at all relevant times herein, has been conducting business in Maricopa County, Arizona, that had an impact on interstate commerce.

10.     Noble 33 Management, LLC is a Nevada limited liability company that, at all relevant times herein, has been conducting business in Maricopa County, Arizona, that had an impact on interstate commerce.

11.     The Madera Group, LLC is a Nevada limited liability company that, at all relevant times herein, has been conducting business in Maricopa County, Arizona, that had an impact on interstate commerce.

12.     Tosh Berman is the Co-Founder and Chairman of Noble 33.  He is also the Manager of the Madera Group, LLC; a Managing Member of Noble 33 Holdings, LLC; and a Managing Member of Noble 33 Management, LLC.  Upon information and belief, Berman is a resident of Colorado.

13.     Michael Tanha is the Co-Founder and Chairman of Noble 33.  He is also a Managing Member of Noble 33 Holdings, LLC; and a Managing Member of Noble 33 Management, LLC.  Upon information and belief, Tanha is a resident of Florida.

14.     Mahdiar Karamooz is the Chief Financial Officer of Noble 33.  Upon information and belief, Karamooz is a resident of Texas.

15.     Upon information and belief, Noble 33 Holdings, LLC; Noble 33 Management, LLC; the Madera Group; Berman; Tanha; and Karamooz  operate as and are members of an associated-in-fact enterprise for purposes of Chapter 96 of Title 18 of the United States Annotated Code (collectively, the "Noble/Madera Syndicate Enterprise"). The Individual Defendants and the other entity Defendant members of the Noble/Madera Syndicate Enterprise formed or comprise parts of a multi-level corporate structure through

which investments were solicited and the Restaurant Entity Defendants operated in an unlawful and fraudulent manner.

16.    This Court has federal question jurisdiction over various of the claims brought by Plaintiffs.

17.    Venue is proper in this Court pursuant to 18 U.S.C.A. §§ 1965(a), (b).

## GENERAL ALLEGATIONS

18.    Toca Madera Scottsdale, Toca Madera Las Vegas, and Casa Madera West Hollywood are successful restaurants located in Scottsdale, Las Vegas, and West Hollywood, respectively.  These restaurants are owned, respectively, by Toca Madera Scottsdale, LLC; Toca Madera Las Vegas, LLC; and Casa Madera WeHo, LLC.

19.    Toca Madera Brickell is another restaurant, the same concept as Toca Madera Scottsdale, Toca Madera Las Vegas, and Casa Madera West Hollywood, that is currently being built in Miami, Florida.

20.    Upon information and belief, Toca Madera Scottsdale, Toca Madera Las Vegas, Toca Madera Brickell, and Casa Madera West Hollywood are operated and managed in some capacity by Noble 33 Holdings, LLC; Noble 33 Management, LLC; or the Madera Group, LLC without regard to the actual lawful managers of each of these entities.

21.    Upon information and belief, each restaurant is also owned in part by various members that invested in the restaurant entity, using wire transfers to fund their investments.

### *The Enterprise*

22.    An "enterprise," for purposes of RICO, includes an associated-in-fact enterprise, which is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (quoting *U.S. v. Turkette*, 452 U.S. 576, 583 (1981)).

23.    Upon information and belief, Noble 33 Holdings, LLC; Noble 33 Management, LLC; the Madera Group; Tosh Berman; Michael Tanha; and Mahdiar

Karamooz, together, are an associated-in-fact enterprise (the "Noble/Madera Syndicate Enterprise) by way of their association together for the common purpose of soliciting investments and operating the Restaurant Entity Defendants in a fraudulent fashion for the *personal* benefit of Tosh Berman, Michael Tanha, and Mahdiar Karamooz, allowing them to live lives of extreme luxury at the expense of the Restaurant Entity Defendants' innocent investors.

24.    Upon information and belief, the Noble/Madera Syndicate Enterprise's common purpose is achieved by fraudulently siphoning and embezzling money from Toca Madera Scottsdale, Toca Madera Las Vegas, Toca Madera Brickell, and Casa Madera West Hollywood for the benefit of Berman, Tanha, and Karamooz, and concealing such unlawful conduct from the Restaurant Entity Defendants' innocent investors by communicating fraudulent financial reports via email communication and disbursing fraudulently diminished distributions via wire transfer.

### *The System*

25.    Upon information and belief, Toca Madera Scottsdale, Toca Madera Las Vegas, Toca Madera Brickell, and Casa Madera West Hollywood are operated and managed in some capacity by Noble 33 Holdings, LLC; Noble 33 Management, LLC; the Madera Group, LLC; and, in the grand scheme of things, each of the members of the Noble/Madera Syndicate Enterprise.

26.    Upon information and belief, with the exception of Toca Madera Scottsdale, the Noble/Madera Syndicate Enterprise keeps each of the restaurants with very little cash on hand; not because the restaurants do not have any revenues between their sales and investments, but because the Noble/Madera Syndicate Enterprise is siphoning from each of the restaurants any additional revenue for the personal benefit of its individual participants.

27.    The Noble/Madera Syndicate Enterprise achieves this goal through, among other unlawful activity, the following schemes:

### *The inKind Scheme*

28.    inKind    Capital    ("inKind"),    according    to    its    website, https://inkindcapital.com/, provides funding to restaurants by purchasing and selling food and beverage credit to guests, who then visit those restaurants.

29.    According to inKind's website, inKind first provides funding to a restaurant by purchasing food and beverage credit.

30.    Then, inKind sells the food and beverage credit to potential guests of the restaurant at a *discount* on inKind's app.

31.    The guests then go to the restaurant and can spend the inKind food and beverage credit (that they bought at a discount) on their bill.

32.    In other words, guests will receive more food and beverage at the restaurant than they otherwise would have for the money they paid, but the restaurant accepts this discount payment because of the payments received from inKind.

33.    Relevantly here, the Noble/Madera Syndicate Enterprise entered a relationship with inKind whereby, upon information and belief, inKind provided the Noble/Madera Syndicate Enterprise $3,000,000.00 in exchange for food and beverage credits to the Restaurant Entity Defendants.

34.    Upon information and belief, the Noble/Madera Syndicate Enterprise retained the $3,000,000.00 it received from inKind and did not transfer such funds to the Restaurant Entity Defendants or otherwise distribute such funds to their respective investors.

35.    Upon further information and belief, when guests later redeemed the food and beverage credit they had purchased from inKind at the Restaurant Entity Defendants, the Noble/Madera Syndicate Enterprise directed that such sales be written off, or "comped."

36.    In other words, upon information and belief, the Noble/Madera Syndicate Enterprise collected $3,000,000.00 for the personal benefit or its participants and caused the expense for all the food and beverage redeemed by customers via inKind credit at the

Restaurant Entity Defendants to be born entirely by the Restaurant Entity Defendants and, ultimately, their respective innocent investors. By doing so, the Noble/Madera Syndicate Enterprise enjoyed for its participants all of the benefits of the inKind relationship while foisting upon the Restaurant Entity Defendants and their innocent investors all of the expense incurred to realize such benefits.

### *The Super Bowls LVII and LVIII/Private Event Scheme*

37.     On February 12, 2023, Super Bowl LVII was held in Glendale, Arizona.

38.     Upon information and belief, an entity named Endeavor Operating Company, LLC/WME (or its affiliates) ("Endeavor") made an arrangement with the Noble/Madera Syndicate Enterprise to buyout Toca Madera Scottsdale for the weekend of February 12, 2023, for the sum of $1.3 million.

39.     Upon information and belief, instead of transferring the entirety of the funds it collected from Endeavor into Toca Madera Scottsdale, LLC as revenue and to cover its expenses for the buyout, the Noble/Madera Syndicate Enterprise siphoned $700,000.00 from this transaction for the personal benefit of its participants and represented to employees and innocent restaurant investors that the buyout was only arranged for $600,000.00.[1]

40.     Upon further information and belief, various high-level employees of Noble 33 Management, Noble 33 Holdings, and/or the Madera Group were aware of the true value of the buyout, but Mr. Berman of the Noble/Madera Syndicate Enterprise directed them to lie to innocent restaurant investors and other employees of Toca Madera Scottsdale, such as servers, with respect to the amount actually paid by Endeavor for the buyout.

41.     The Noble/Madera Syndicate Enterprise retained the $700,000.00 for the personal benefit of its participants.

42.     Later, on February 11, 2024, Super Bowl LVIII was held in Las Vegas, Nevada.

---

[1] To Plaintiffs' knowledge, Endeavor was not aware of the Noble/Madera Syndicate Enterprise's embezzlement of $700,000.00.

43.     Upon information and belief, Endeavor and the Enterprise made an arrangement for Endeavor to buyout Toca Madera Las Vegas for the weekend of February 11, 2024, again for $1.3 million.

44.     Again, upon information and belief, instead of transferring the entirety of the funds it collected from Endeavor into Toca Madera Las Vegas, LLC as revenue and to cover its expenses for the buyout, the Noble/Madera Syndicate Enterprise siphoned a portion of such funds for the benefit of its participants and represented to employees and innocent restaurant investors that the buyout was arranged for less than $1.3 million.

### *Employees of Different Entities Paid Through Toca Madera Scottsdale*

45.     Upon information and belief, various employees of Noble 33 Management, LLC; Noble 33 Holdings, LLC; and and/or the Madera Group, LLC received their paychecks through and from Toca Madera Scottsdale, LLC, not the respective entity by whom they are employed.

46.     Upon information and belief, the Noble/Madera Syndicate Enterprise made this arrangement to increase revenues at the Noble 33 Management, LLC; Noble 33 Holdings; LLC and/or Madera Group, LLC level in order to create bigger distributions for the participants of the Noble/Madera Syndicate Enterprise.

47.     Meanwhile, the innocent investors of Toca Madera Scottsdale, LLC bore the payroll expense incurred in connection with these persons who did not, in fact, work for Toca Madera Scottsdale, LLC.

48.     This reduced the profitability of Toca Madera Scottsdale, LLC and, consequently, the distributions to its innocent investors.

49.     Upon further information and belief, the Noble/Madera Syndicate Enterprise also misclassified various employees as K-1 recipients for the purposes of evading payroll taxes, again to increase profitability to the participants of the Noble/Madera Syndicate Enterprise.

### *Mismanagement of Company Funds*

50.     Upon information and belief, Tanha and Berman of the Noble/Madera

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

51534117

Syndicate Enterprise have mismanaged funds belonging to Toca Madera Scottsdale, LLC; Toca Madera Las Vegas, LLC; Casa Madera West Hollywood, LLC; and Toca Madera Brickell, LLC by using company funds for personal purchases.

51.     Upon information and belief, Tanha and Berman have used company funds, or funds distributed to them through the above-described schemes, on personal purchases such as:

      a.     A residential ranch in Aspen, Colorado;

      b.     Approximately $100,000.00 worth of furniture for that ranch;

      c.     Multiple engagement rings;

      d.     Plane tickets for various females and OnlyFans models to attend restaurant openings;

      e.     A luxury wakeboard boat worth several hundred thousand dollars;

      f.     A $25,000.00 per month residential rental off the coast of Miami, at least half of which (between $10,000.00 to $15,000.00) per month is expensed to some combination of the Restaurant Entity Defendants;

      g.     A $5,000,000.00 residential home in Miami, purchased from third-party Michael Dalesandro;

      h.     Personal travel to foreign countries and continents including Europe, Australia, Dubai, etc.; and

      i.     Sportscars, including a brand new white Ferrari and a luxury Maybach SUV.

52.     Upon information and belief, Mr. Karamooz falsified financial records for each of the Restaurant Entity Defendants to hide the purchases made by Tanha and Berman, as described above.

53.     Upon information and belief, members of the Noble/Madera Syndicate Enterprise are, to this day, continuing to direct current employees of Noble 33 Management, Noble 33 Holdings, and/or the Madera Group to delete, alter, or destroy files and data related to the above referenced purchases—as well as the other schemes identified

above—in order to further mask the Noble/Madera Syndicate Enterprise's fraudulent scheme.

### *MGI's Efforts to Obtain Company Records*

54.     On May 14, 2024, MGI made specific records requests of Toca Madera Scottsdale pursuant to Paragraph 7.04 of its Operating Agreement and A.R.S. § 29-3410. Toca Madera Scottsdale did not produce the requested records within the ten (10) days prescribed by A.R.S. § 29-3410(c).

55.     On June 7, 2024, MGI made another formal written request for the records.

56.     On June 12, 2024, Toca Madera Scottsdale filed a lawsuit against MGI, Maricopa County Superior Court Case No. CV2024-015155.  Toca Madera Scottsdale alleges in that lawsuit that it "recently received correspondence from a third-party claiming to be a unit holder and investor[] in TocaMadera," and that MGI must have transferred its shares to third-parties (collectively, the "Third-Party Claimants") in violation of its Operating Agreement.  Such allegations are categorically false.  MGI has maintained sole ownership of its shares since they were purchased.

57.     On or around June 14, 2024, Toca Madera Scottsdale produced less than a quarter of the requested documents in an obvious attempt to placate MGI while continuing to skirt its responsibilities.  On July 3, 2024, MGI responded to Toca Madera Scottsdale's business record production, notifying Toca Madera Scottsdale of the insufficiency of its production and demanding a supplemental, curative production, or coordination of arrangements for an inspection of the records requested, by July 10, 2024.  To date, Toca Madera Scottsdale has failed to respond in any fashion to this request apart from arguing that MGI is not entitled to the requested records.

58.     Toca Madera Scottsdale filed the lawsuit in the wake of MGI lawfully exercising its rights to inspect Toca Madera Scottsdale's business records.  The timing of initiation of the lawsuit reflects that, upon information and belief, TMS' motivation for doing so was to attempt to dissuade and intimidate MGI from exercising its lawful rights to obtain the records that Toca Madera Scottsdale still refuses to produce.  In this regard,

Toca Madera Scottsdale claims to have learned of MGI's alleged unauthorized transfer which forms the basis of Toca Madera Scottsdale's claim on February 16, 2023 but waited nearly one and a half years until June 12, 2024, one month after receiving MGI's record inspection request, to assert its claim against MGI.

59.     Upon information and belief, Toca Madera Scottsdale's lawsuit against MGI and Toca Madera Scottsdale's refusal to provide MGI with the records to which it is entitled as an investor were to intended to conceal facts and records reflecting the fraudulent conduct described herein.

60.     MGI made similar inspection demands to each of Toca Madera Las Vegas and Casa Madera West Hollywood with the same results – namely those entities making insufficient productions and filing suits against MGI seeking its disassociation from those entities.

## <u>COUNT ONE – RICO Violation Pursuant to 18 U.S.C. § 1962</u>

## **(Against The Noble/Madera Syndicate Enterprise)**

61.     Plaintiffs incorporate each of the above allegations as though fully set forth herein.

62.     Pursuant to Section 1962(c): "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

63.     "To state a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.' " *Odom*, 486 F.3d at 547.

### ***The Enterprise***

64.     Upon information and belief, as pled above, Toca Madera Scottsdale, LLC; Toca Madera Las Vegas, LLC; Toca Madera Brickell, LLC; Casa Madera West Hollywood, LLC; Noble 33 Holdings, LLC; Noble 33 Management, LLC; the Madera Group; Tosh Berman; Michael Tanha; and Mahdiar Karamooz, together, are an associated

in fact enterprise, the Noble/Madera Syndicate Enterprise, by way of their association for the common purpose of running the Noble 33 and Toca Madera entities improperly for personal benefit of the Individual Defendants, allowing them to live lives of extreme luxury at the expense of the Restaurant Entity Defendants' shareholders.

65.     Upon information and belief, the Noble/Madera Syndicate Enterprise's common purpose is achieved by fraudulently siphoning and embezzling money from Toca Madera Scottsdale, Toca Madera Las Vegas, Toca Madera Brickell, and Casa Madera West Hollywood for the benefit of the Individual Defendants, as explained above.

### *The Conduct*

66.     Upon information and belief, the conduct through which the Noble/Madera Syndicate Enterprise pursues this common purpose is detailed above and includes:

a.     Siphoning revenues and resources from Toca Madera Scottsdale, Toca Madera Las Vegas, Toca Madera Brickell, and Casa Madera West Hollywood;

b.     Siphoning payments from inKind and writing off, or "comping," the inKind credits used at the restaurants on the back end;

c.     Renting out Toca Madera Scottsdale and Toca Madera Las Vegas for Super Bowls LVII and LVIII and siphoning money from the buyout instead of putting the entire buyout fee into the respective restaurants as revenue;

d.     Placing corporate employees of Noble 33 and/or the Madera Group on the payroll for Toca Madera Scottsdale to increase profitability for the Noble/Madera Syndicate Enterprise at the Noble 33 level by decreasing the profitability of Toca Madera Scottsdale; and

e.     Expensing personal purchases through the various restaurants.

### *The Unlawful Activity*

67.     A "racketeering activity" under 18 U.S.C. § 1961(1) includes wire fraud. The elements of wire fraud are: (1) a scheme to defraud; (2) an intent to defraud; and (3) the use of wires in furtherance of the scheme. *See U.S. v. Leahy*, 464 F.3d 773, 786 (7th Cir. 2006).

68.    Upon information and belief, the Noble/Madera Syndicate Enterprise engaged in a scheme to defraud; namely, offering an investment opportunity to various investors that would include the investors unknowingly receiving a watered-down return on their investment for the benefit of the members of Noble/Madera Syndicate Enterprise.

69.    Upon information and belief, the Noble/Madera Syndicate Enterprise intended to defraud investors in this way and intentionally left them in the dark as to the true revenues of the restaurant entities, as well as how much money the Enterprise was siphoning from the restaurant entities for their own personal benefit.

70.    Upon information and belief, the Noble/Madera Syndicate Enterprise used wires in furtherance of this scheme; accepting investments from shareholders via wire and transmitting by email to Plaintiffs and the other innocent restaurant level investors over the course of years periodic fraudulent financial reports falsely omitting each restaurant entity's actual revenues and expenses to conceal the siphoning of revenues engaged in by the members of the Noble/Madera Syndicate Enterprise.

71.    Upon information and belief, the Noble/Madera Syndicate intended that Plaintiffs and the other innocent restaurant level investors rely upon these fraudulent financial reports in evaluating the performance of their investments and the return thereon.

72.    Upon information and belief, when Plaintiffs demanded more detailed financial records from the Restaurant Entity Defendants, the participants in the Noble/Madera Syndicate Enterprise caused the Restaurant Entity Defendants to file spurious lawsuits against Plaintiffs so as to shield their fraudulent activity from discovery and perpetuate their fraudulent schemes.

73.    For the foregoing reasons, upon information and belief, the Noble/Madera Syndicate Enterprise engaged in wire fraud, a racketeering activity under 18 U.S.C. § 1961(1).

74.    A "racketeering activity" under 18 U.S.C. § 1961(1) also includes racketeering itself. Pursuant to 18 U.S.C. § 1952, "[w]homever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with

intent to . . . distribute the proceeds of any unlawful activity; or . . . otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,"[2] has committed racketeering. *See* 18 U.S.C. § 1952(a).

75.     Upon information and belief, the Noble/Madera Syndicate Enterprise has committed wire fraud of over $10,000.00, an "unlawful activity," and distributed the proceeds amongst its participants.

76.     Specifically, upon information and belief, the Noble/Madera Syndicate Enterprise has accepted investments from shareholders of Toca Madera Scottsdale, Toca Madera Las Vegas, Toca Madera Brickell, and Casa Madera West Hollywood under the pretenses that the money would solely be used for development of the applicable restaurant entity, and then, upon information and belief, siphoned some of the investments received via wire for their own personal gain.

77.     Upon information and belief, the participants of the Noble/Madera Syndicate Enterprise have emailed fraudulent financial reports to Plaintiffs and other innocent restaurant level investors to conceal and perpetuate their fraudulent scheme.

78.     Upon information and belief, the participants of the Noble/Madera Syndicate Enterprise have caused to be transferred to each other the proceeds of their fraudulent scheme via wire transfer and/or otherwise using the means of interstate commerce, which proceeds have then been used to fund lavish lifestyles realized at the expense of innocent investors such as Plaintiffs.

79.     For the foregoing reasons, upon information and belief, the Enterprise engaged racketeering, a racketeering activity under 18 U.S.C. § 1961(1).

---

[2] "Unlawful activity" includes any act indictable under 18 U.S.C. § 1957, which includes a knowing engagement in a monetary transaction in criminally derived property of value greater than $10,000 derived from any of the activities listed as offenses in Section 1961(1), which include wire fraud, mail fraud, tampering with a witness, and racketeering. *See* 18 U.S.C. §§ 1952, 1957, 1956.

***The Pattern***

80.     A "pattern of racketeering activity" requires "at least two acts of racketeering activity . . . within ten years . . . ."  18 U.S.C. 1961(5).

81.     Upon information and belief, all or some of the participants in the Noble/Madera Syndicate Enterprise have been engaged in the above referenced conduct, or provided substantial assistance in its achievement, consistently since the opening of Toca Madera Scottsdale in 2019, and such wrongful conduct remains ongoing.

82.     Accordingly, upon information and belief, the Noble/Madera Syndicate Enterprise's conduct constitutes a "pattern" of racketeering activities.

83.     As a direct and proximate result of the Noble/Madera Syndicate Enterprise's pattern of racketeering activity, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT TWO – Private Securities Fraud

### (Against The Noble/Madera Syndicate Enterprise)

84.     Plaintiffs incorporate each of the above allegations as though fully set forth herein.

85.     The elements of a private securities fraud claim are: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.  *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809–10 (2011).

86.     Upon information and belief, the Noble/Madera Syndicate Enterprise made a material misrepresentation or omission in the sale of securities to the shareholders of the Toca Madera entities; namely that the Noble/Madera Syndicate Enterprise would embezzle and siphon revenues from the Toca Madera entities for their own personal gain and provide the shareholders with watered-down distributions through the various methods described above including:

a.     Siphoning revenues and resources from Toca Madera Scottsdale,

Toca Madera Las Vegas, Toca Madera Brickell, and Casa Madera West Hollywood;

      b.     Siphoning payments from inKind and writing off, or "comping," the inKind credits used at the restaurants on the back end;

      c.     Renting out Toca Madera Scottsdale and Toca Madera Las Vegas for Super Bowls LVII and LVIII and siphoning money from the buyout instead of putting the entire buyout fee into the respective restaurants as revenue;

      d.     Placing corporate employees of Noble 33 and/or the Madera Group on the payroll for Toca Madera Scottsdale to increase profitability for the Noble/Madera Syndicate Enterprise at the Noble 33 level by decreasing the profitability of Toca Madera Scottsdale; and

      e.     Expensing personal purchases through the various restaurants.

87.    Upon information and belief, the Noble/Madera Syndicate Enterprise engaged in this conduct intentionally, willfully, and with scienter.

88.    There is a connection between the misrepresentation or omission and the purchase of sales and securities, as the investors purchased shares in the Restaurant Entity Defendants relying on the representation that they would receive true and correct financial information and distributions.

89.    The Noble/Madera Syndicate Enterprise's conduct has actually and proximately caused material economic loss to the shareholders of the Restaurant Entity Defendants in an amount to be proven at trial.

## COUNT THREE – Breach of Fiduciary Duties
## (Against the Madera Group, LLC)

90.    Plaintiffs incorporate each of the above allegations as though fully set forth herein.

91.    The Restaurant Entity Defendants are manager-managed limited liability companies, namely under the control of the Madera Group, LLC.

92.    Pursuant to A.R.S. § 29-3409(I), the Madera Group, LLC "owes to the company and the members the duties of loyalty and care . . . ." A.R.S. § 29-3409(I).

93.    Upon information and belief, the Madera Group, LLC breached these fiduciary duties by engaging in conduct such as:

a.    Siphoning revenues and resources from the Restaurant Entity Defendants;

b.    Siphoning payments from inKind and writing off, or "comping," the inKind credits used at the restaurants on the back end;

c.    Renting out Toca Madera Scottsdale and Toca Madera Las Vegas for Super Bowls LVII and LVIII and siphoning money from the buyout instead of putting the entire buyout fee into the respective restaurants as revenue;

d.    Placing corporate employees of Noble 33 and/or the Madera Group on the payroll for Toca Madera Scottsdale to increase profitability for the Noble/Madera Syndicate Enterprise at the Noble 33 level by decreasing the profitability of Toca Madera Scottsdale; and

e.    Expensing the personal purchases of Noble/Madera Syndicate Enterprise members through the various restaurants.

94.    As a direct and proximate result of the Madera Group, LLC's breach, Plaintiffs have been injured in an amount to be proven at trial.

95.    This claim is brought derivatively on behalf of the Restaurant Entity Defendants.

96.    Demand upon the Madera Group, LLC related to these claims would be futile.

97.    The Madera Group, LLC's actions were taken with reckless disregard as to the rights of the Restaurant Entity Defendants, and by extension the innocent investors therein such as Plaintiffs, such that Plaintiffs are entitled to punitive damages.

## COUNT FOUR – Aiding and Abetting Breach of Fiduciary Duties
## (Against Noble 33 Holdings, LLC; Noble 33 Management, LLC; and the Individual Defendants)

98.    Plaintiffs incorporate each of the above allegations as though fully set forth

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

51534117

1  herein.

2      99.    As explained above in Count Three, the Madera Group, LLC owed fiduciary

3  duties to the Restaurant Defendant Entities, and by extension the innocent investors therein

4  such as Plaintiffs.

5      100.    Upon information and belief, the Madera Group, LLC breached those

6  fiduciary duties, causing harm to the Restaurant Entity Defendants and by extension the

7  innocent investors therein such as Plaintiffs.

8      101.    Upon information and belief, Defendants Noble 33 Holdings, LLC; Noble

9  33 Management, LLC; and the Individual Defendants knew of the Madera Group, LLC's

10  fiduciary duties and of the Madera Group, LLC's breach of those duties.

11      102.    Upon information and belief, Defendants Noble 33 Holdings, LLC; Noble

12  33 Management, LLC; and the Individual Defendants substantially assisted and/or

13  encouraged the Madera Group, LLC's breach by accepting siphoned revenues and covering

14  up the evidence of the Madera Group, LLC's theft thereafter.

15      103.    Upon information and belief, the Madera Group, LLC's breach was achieved

16  in large part because of the assistance and/or encouragement from Defendants Noble 33

17  Holdings, LLC; Noble 33 Management, LLC; and the Individual Defendants.

18      104.    As a direct and proximate result of Defendants Noble 33 Holdings, LLC;

19  Noble 33 Management, LLC; and the Individual Defendants actions, the Restaurant Entity

20  Defendants, and the innocent investors therein such as Plaintiffs, have suffered damages in

21  an amount to be proven at trial.

22      105.    This claim is brought derivatively on behalf of the Restaurant Entity

23  Defendants.

24      106.    Demand upon Defendants Noble 33 Holdings, LLC; Noble 33 Management,

25  LLC; and the Individual Defendants related to these claims would be futile.

26      107.    Defendants Noble 33 Holdings, LLC; Noble 33 Management, LLC; and the

27  Individual Defendants' actions were taken with reckless disregard as to the rights of the

28  Restaurant Entity Defendants, and the innocent investors therein such as Plaintiffs, such

1    that Plaintiffs are entitled to punitive damages.

2                          **COUNT FIVE – Conversion**

3                          **(Against the Madera Group, LLC)**

4         108.    Plaintiffs incorporate each of the above allegations as though fully set forth

5    herein.

6         109.    At all times, the Restaurant Entity Defendants owned and had a right to their

7    revenues.

8         110.    Upon information and belief, the Madera Group, LLC converted the

9    Restaurant Entity Defendants' property by engaging in conduct such as:

10                a.    Siphoning revenues and resources from the Restaurant Entity

11   Defendants;

12                b.    Siphoning payments from inKind and writing off, or "comping," the

13   inKind credits used at the restaurants on the back end;

14                c.    Renting out Toca Madera Scottsdale and Toca Madera Las Vegas for

15   Super Bowls LVII and LVIII and siphoning money from the buyout instead of

16   putting the entire buyout fee into the respective restaurants as revenue;

17                d.    Placing corporate employees of Noble 33 and/or the Madera Group

18   on the payroll for Toca Madera Scottsdale to increase profitability for the

19   Noble/Madera Syndicate Enterprise at the Noble 33 level by decreasing the

20   profitability of Toca Madera Scottsdale; and

21                e.    Expensing the personal purchases of Noble/Madera Syndicate

22   Enterprise members through the various restaurants.

23        111.    As a direct and proximate result of the Madera Group LLC's actions, the

24   Restaurant Entity Defendants, and the innocent investors therein such as Plaintiffs, have

25   suffered damages in an amount to be proven at trial.

26        112.    This claim is brought derivatively on behalf of the Restaurant Entity

27   Defendants.

28        113.    Demand upon the Madera Group LLC related to these claims would be futile.

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

- 19 -

51534117

114.    The Madera Group LLC's actions were taken with reckless disregard as to the rights of the Restaurant Entity Defendants, and the innocent investors therein such as Plaintiffs, such that Plaintiffs are entitled to punitive damages.

<u>**COUNT SIX – Aiding and Abetting Conversion**</u>

<u>**(Against Noble 33 Holdings, LLC; Noble 33 Management, LLC; and the Individual Defendants)**</u>

115.    Plaintiffs incorporate each of the above allegations as though fully set forth herein.

116.    As explained above in Count Five, the Madera Group LLC has committed conversion against the Restaurant Entity Defendants and the innocent investors therein such as Plaintiffs.

117.    Upon information and belief, Defendants Noble 33 Holdings, LLC; Noble 33 Management, LLC; and the Individual Defendants knew that the Madera Group LLC's conduct constituted conversion of the resources and revenues properly belonging to the Restaurant Entity Defendants and, by extension, the innocent investors therein such as Plaintiffs.

118.    Upon information and belief, Defendants Noble 33 Holdings, LLC; Noble 33 Management, LLC; and the Individual Defendants substantially assisted and/or encouraged the Madera Group LLC in its conversion by accepting converted resources, revenues, etc. and covering up the evidence of the Madera Group, LLC's theft thereafter.

119.    Upon information and belief, the Madera Group LLC's conversion of resources and revenues belonging to the Restaurant Entity Defendants was achieved because of the assistance and/or encouragement from Defendants Noble 33 Holdings, LLC; Noble 33 Management, LLC; and the Individual Defendants.

120.    As a direct and proximate result of Defendants Noble 33 Holdings, LLC; Noble 33 Management, LLC; and the Individual Defendants, the Restaurant Entity Defendants, and the innocent investors therein such as Plaintiffs, have suffered damages in an amount to be proven at trial.

121.    This claim is brought derivatively on behalf of the Restaurant Entity Defendants.

122.    Demand upon Defendants Noble 33 Holdings, LLC; Noble 33 Management, LLC; and the Individual Defendants related to these claims would be futile.

123.    Upon information and belief, the actions of Defendants Noble 33 Holdings, LLC; Noble 33 Management, LLC; and the Individual Defendants were taken with reckless disregard as to the rights of the Restaurant Entity Defendants, and the innocent investors therein such as Plaintiffs, such that Plaintiffs are entitled to punitive damages.

## COUNT SEVEN – Common Law Fraud
### (Against the Noble/Madera Syndicate Enterprise)

124.    Plaintiffs incorporate each of the above allegations as though fully set forth herein.

125.    Upon information and belief, the Noble/Madera Syndicate Enterprise made material misrepresentations to the investors of the Toca Madera entities; namely that the Noble/Madera Syndicate Enterprise would not embezzle and siphon revenues from the Restaurant Entity Defendants for the Noble/Madera Syndicate Enterprise members' own personal gain and provide the investors with watered-down distributions and concealing the same through dissemination of false financial reports to the investors, through the various methods described above including:

a.    Siphoning revenues and resources from Toca Madera Scottsdale, Toca Madera Las Vegas, Toca Madera Brickell, and Casa Madera West Hollywood;

b.    Siphoning payments from inKind and writing off, or "comping," the inKind credits used at the restaurants on the back end;

c.    Renting out Toca Madera Scottsdale and Toca Madera Las Vegas for Super Bowls LVII and LVIII and siphoning money from the buyout instead of putting the entire buyout fee into the respective restaurants as revenue;

d.    Placing corporate employees of Noble 33 and/or the Madera Group on the payroll for Toca Madera Scottsdale to increase profitability for the

Noble/Madera Syndicate Enterprise at the Noble 33 level by decreasing the profitability of Toca Madera Scottsdale; and

e.    Expensing personal purchases through the various restaurants.

126.    As shown, the Noble/Madera Syndicate Enterprise's representation was false.

127.    Upon information and belief, the members of the Noble/Madera Syndicate Enterprise knew of the representation's falsity and intended that Plaintiffs and other innocent investors rely upon it.

128.    Plaintiffs were unaware of the representation's falsity and therefore were justified in their reliance on its truth.

129.    As a direct and proximate result of the Noble/Madera Syndicate Enterprise's fraudulent conduct, Plaintiffs have been damaged in an amount to be proven at trial.

130.    Upon information and belief, the Noble/Madera Syndicate Enterprise's actions were taken with reckless disregard as to the rights of Plaintiffs such that Plaintiffs are entitled to punitive damages.

## COUNT EIGHT – Constructive Trust
## (Against the Individual Defendants)

131.    Plaintiffs incorporate each of the above allegations as though fully set forth herein.

132.    Upon information and belief, the Individual Defendants engaged in conduct to the detriment of Plaintiffs solely as a means for usurping and taking advantage of resources and revenues that rightly belonged to Plaintiffs in the form of distributions.

133.    Any funds, property, or other assets in the possession of the Individual Defendants (or any entity within any of their control) traceable to the fraudulent conduct engaged in by the Individual Defendants and the remaining members of the Noble/Madera Syndicate Enterprise should be deemed held in a constructive trust for the benefit of the Restaurant Entity Defendants.

134.    This claim is brought derivatively on behalf of the Restaurant Entity

Defendants.

135. Demand upon the Individual Defendants related to these claims would be futile.

## **DEMAND FOR JURY TRIAL**

136. Plaintiffs demand, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues, including all claims, counterclaims, and cross-claims.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A. A constructive trust over the assets and business of the Individual Defendants or any entity under any of their control that are traceable to the fraudulent conduct engaged in by the Noble/Madera Syndicate Enterprise;

B. Joint and several liability amongst all Defendants for compensatory damages, treble damages (related to Count One), and punitive damages (related to Counts Three, Four, Five, Six, and Seven) in an amount to be determined at trial;

C. An award of attorneys' fees pursuant to 18 U.S.C. § 1964(c) and any other applicable authority;

D. For pre- and post-judgment interest on such damages to the maximum extent permitted by law; and

E. For any additional relief this Court deems appropriate.

DATED this 30th day of January, 2026.

FENNEMORE CRAIG, P.C.


By:  */s/ William G. Klain*
William G. Klain
Sean T. Hood
Spencer A. Shockness
Attorneys for Plaintiffs

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION**

Under penalty of perjury, I declare as follows:

I am a Manager of Madera Group Investments, LLC and Madera Group Holdings, LLC in this action. I have read the attached *Verified Complaint* and am familiar with its content. I declare that its content is true to the best of my personal knowledge, except as to those matters stated upon information and belief, and as to those matters, I believe them to be true. Because I am not an attorney, I make no declarations concerning the legal arguments made therein.

EXECUTED on ___1/30/2026_____.

DocuSigned by:

_____
3B9BAF95458444E...

Scott Jackson, as Manager of Madera Group Investments, LLC and Madera Group Holdings, LLC